## UNITED STATE DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL ANTHONY GODINEZ, as | ) | |
| special administrator for the estate of | ) | |
| MICHAEL O. GODINEZ, deceased, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 24-cv-04317 |
| | ) | |
| TRAVON DONE, and the VILLAGE OF SAUK | ) | |
| VILLAGE, an Illinois municipal corporation, | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANT TRAVON DONE'S ANSWER TO PLAINTIFF'S COMPLAINT

The Defendant, TRAVON DONE, (hereinafter "Defendant") by and through his attorney Sean M. Sullivan of DEL GALDO LAW GROUP, LLC, in answer to Plaintiff's Complaint states:

### GENERAL ALLEGATIONS

### Jurisdiction, Venue & Parties

1.       This is an action pursuant to 42 U.S.C.§ 1983 for legal relief to redress deprivations, under color of state law, of rights secured by the Fourth and Fourteenth Amendments to the United States Constitution and the laws of the United States, and the State of Illinois. Jurisdiction is vested in this court pursuant to 28 U.S.C. §§ 1331 and 1343 (a)(3) and (4).

**ANSWER: Defendant admits that the Court has jurisdiction, and that Plaintiff is bringing this action pursuant to 42 U.S.C. Section 1983, however, Defendant denies that Plaintiff is entitled to redress or that Plaintiff's civil rights were deprived.**

2.       Jurisdiction for Plaintiff's state claims is based on supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

**ANSWER:  Defendant admits the allegations in paragraph 2 but denies that Plaintiff is entitled to redress or that Plaintiff's civil rights were deprived.**

1

3.      Defendant Village of Sauk Village ("Sauk Village") is an Illinois municipal corporation, duly constituted under the laws of the State of Illinois that is primarily located in Cook County, with a small portion located in Will County.

**ANSWER: Defendant admits the allegations in paragraph 3.**

4.      Defendant Travon Done resides in Kankakee County, Illinois.

**ANSWER:  Defendant denies the allegations in paragraph 4.**

5.      Plaintiff Michael Anthony Godinez was appointed special administrator for the estate of Michael O. Godinez, deceased, in Iroquois County Circuit Court Case No. 24 PR 27.

**ANSWER:   Defendant lacks sufficient personal knowledge of the allegations to form a belief as to the truth of the allegations contained in paragraph 5.**

6.      Special Administrator Michael Anthony Godinez is authorized to prosecute this litigation on behalf of the estate.

**ANSWER:  Defendant lacks sufficient personal knowledge of the allegations to form a belief as to the truth of the allegations contained in paragraph 6.**

7.      Special Administrator Michael Anthony Godinez is an adult resident of the State of Illinois residing in Kankakee County, Illinois. He is the father of decedent Michael O. Godinez.

**ANSWER:   Defendant lacks sufficient personal knowledge of the allegations to form a belief as to the truth of the allegations contained in paragraph 7.**

8.      Venue is vested in this Court pursuant to 28 U.S.C. § 1391(b).

**ANSWER: Defendant admits the allegations in paragraph 8.**

### The Shooting

9.      On May 27, 2023, Decedent Michael O. Godinez was 23 years old.

**ANSWER: Defendant admits the allegations in paragraph 9.**

10.      On May 27, 2023, Travon Done was 26 years old.

**ANSWER: Defendant admits the allegations in paragraph 10.**

11.      On and before May 27, 2023, Travon Done was a police officer employed by the Sauk Village Police Department.

**ANSWER: Defendant admits the allegations in paragraph 11.**

12.      On and before May 27, 2023, Sauk Village employed and supervised Sauk Village police officers and staff, including Travon Done.
**ANSWER: Defendant admits the allegations in paragraph 12.**

13.     The Sauk Village Police Department is a division of Sauk Village, a municipal corporation.

**ANSWER: Defendant admits the allegations in paragraph 13.**

14.     Sauk Village is responsible for the policies, practices, and customs of its Police Department.

**ANSWER:  Defendant objects to the allegations in paragraph 14 as vague, confusing, and undefined as to the terms "practices" and "customs".**

**Without waiving said objections, Defendant admits that the Sauk Village Police Department is responsible for its policies and procedures as set forth within any applicable Policies and Procedures manual for said Department personnel.**

15.     Sauk Village is charged with maintaining and administering the Sauk Village Police Department.

**ANSWER: Defendant admits the allegations in paragraph 15.**

16.     At all relevant times, Sauk Village exercised control over the Sauk Village Police Department.

**ANSWER: Defendant objects  to the allegations in paragraph 16 as vague, confusing, and undefined as to the term "exercised control".**

**Without waiving said objections, Defendant admits that the Sauk Village Police Department is the Police Department and an executive office of the Village of Sauk Village, an Illinois municipal corporation, duly constituted under the laws of the State of Illinois.**

17.     Travon Done is sued in his individual capacity and as an agent of Sauk Village.

**ANSWER:  Defendant admits the allegations in paragraph 17.**

18.     On May 27, 2023, Travon Done shot and killed Michael O. Godinez in the vicinity of a residential house located at 1172 Coyote Run, in Bourbonnais, Kankakee County, Illinois (the "Coyote Run house").

**ANSWER:   Defendant admits the allegations in paragraph 18.**

**Answering further, Defendant states that he shot Michael O. Godinez in self-defense and in defense of others and further answers that his use of deadly force was justified  in accordance with Illinois law  and a reasonable use of deadly force under the totality of the circumstances on said date.**

3

19.     The Coyote Run house is a single-family residence with a garage and a large front yard.

**ANSWER: Defendant lacks sufficient personal knowledge of the allegations to form a belief as to the truth of the allegations contained in paragraph 19.**

20.     At all relevant times, Travon Done was acting under the color of state law.

**ANSWER:  Defendant admits the allegations in paragraph 20.**

**Answering further, Defendant states that he shot Michael O. Godinez in self-defense and in defense of others and further answers that his use of deadly force was justified in accordance with Illinois law  and a reasonable use of deadly force under the totality of the circumstances on said date.**

21.     In the early morning hours of May 27, 2023, Michael O. Godinez attended a party at the Coyote Run house.

**ANSWER: Defendant lacks sufficient personal knowledge of the allegations with regard to why Plaintiff's decedent was present at the Coyote Run House on May 27, 2023.**

**Answering further, Defendant admits the allegations in paragraph 21 that Plaintiff's decedent was present at the  Coyote Run house in the early morning hours of May 27, 2023.**

22.     In the early morning hours of May 27, 2023, Travon Done also attended the party at the Coyote Run house.

**ANSWER: Defendant admits the allegations in paragraph 22.**

23.     When Travon Done attended the party, he at times remained a police officer even if he was off duty and not actively working a specific shift with the Sauk Village Police Department.

**ANSWER:  Defendant admits that he was off duty, and a sworn Illinois peace officer employed by the Village of Sauk Village Police Department as a Police Officer when he attended the party at the Coyote Run House on  May 27, 2023.**

24.     At all relevant times, Sauk Village Ordinance Code § 42-23 on Law Enforcement was in force and effect, and it provided that:

"It shall be the duty of every member of the police department to conduct himself in a proper and law-abiding manner, and to avoid the use of unnecessary force".

**ANSWER: Defendant admits the allegations in paragraph 24.**

25.    As a police officer with the Sauk Village Police Department, Travon had a duty at all relevant times to conduct himself in a proper and law-abiding manner and to avoid the use of unnecessary force pursuant to the Sauk Village Law Enforcement Ordinances, including Chapter 42, Section 42-23.

**ANSWER:  Defendant objects to the allegations in paragraph 25 as vague, confusing, and undefined, and lacking specificity as to the terms "duty at all relevant times to conduct himself in a proper and law-abiding manner and to avoid the use of unnecessary force"   and calling for legal conclusions.**

**Without waiving said objections, Defendant admits only those duties imposed by case law.**

**All allegations not specifically admitted are denied.**

26.    As a police officer with the Sauk Village Police Department, Travon Done has a duty at all relevant times to conduct himself in accordance with the Constitution of the United States, including the Fourth Amendment to the Constitution, and the laws and statutes of the United States and State of Illinois, and the Sauk Village Ordinance Code § 42-23.

**ANSWER: Defendant objects to the allegations in paragraph 26 as vague, confusing, and undefined, and lacking specificity as to the terms " duty at all relevant times to conduct himself in accordance with the Constitution of the United States, including the Fourth Amendment to the Constitution, and the laws and statutes of the United States and State of Illinois" and calling for legal conclusions.**

**Without waiving said objections, Defendant admits only those duties imposed by case law or statute. All allegations not specifically admitted are denied.**

27.    Travon Done drove to the party at the Coyote Run house in a silver Jeep Cherokee vehicle (the "Done Vehicle").

**ANSWER:  Defendant admits the allegations in paragraph 27.**

28.    Defendant Travon Done owned the Done Vehicle.

**ANSWER:  Defendant admits the allegations in paragraph 28.**

29.    Defendant Travon Done came to the party at the Coyote Run house with a loaded 9mm firearm.

**ANSWER:  Defendant admits the allegations in paragraph 29.**

30.    In addition to the firearm, Travon Done came to the party at the Coyote Run house with at least two magazine clips with 9mm ammunition in the Done Vehicle.

5

**ANSWER: Defendant admits the allegations in paragraph 30.**

31.     While Travon Done attended the party at the Coyote Run house, he was armed with a firearm that he carried on his person.

**ANSWER: Defendant admits the allegations in paragraph 31.**

32.     Prior to May 27, 2023, Travon Done received law enforcement training on the use of firearms such as the one he was carrying on his person at the party at the Coyote Run house.

**ANSWER: Defendant admits the allegations in paragraph 32.**

33.     Prior to May 27, 2023, Travon Done has received training on the use of firearms from the Sauk Village Police Department.

**ANSWER:  Defendant admits the allegations in paragraph 33.**

34.     In the early morning hours of May 27, 2023, at approximately 3:30 a.m. to 4:30 a.m., while Michael O. Godinez and Travon Done were at the party at the Coyote Run house, a verbal altercation occurred between persons at the party.

**ANSWER: Defendant admits the allegations in paragraph 34.**

35.     During the verbal altercation, the guests at the party were told to leave the Coyote Run house by one or more occupants of the house.

**ANSWER: Defendant admits the allegations in paragraph 35.**

36.     Shortly thereafter, guests at the party went outside into the yard at the house, including Michael O. Godinez and Travon Done.

**ANSWER:  Defendant admits the allegation in paragraph 36 that he left the Coyote Run house and went outside. Defendant did not leave the home with decedent Godinez.**

**Answering further, Defendant states decedent Godinez was personally involved in the altercation inside of the residence and further states Godinez then went to the outside of the residence where Godinez continued to act in a violent manner, brandishing a firearm while at the same time assaulting an individual, B.M., by kicking him while  B.M. was down on the ground outside of the residence.**

37.     The altercation among several of the guests continued in the yard.

**ANSWER:  Defendant admits the allegation in paragraph 37 that an altercation involving decedent Godinez continued outside of the home.**

6

**Answering further, Defendant states decedent Godinez continued to act in a violent manner outside of the residence where Godinez brandished a firearm while at the same time assaulted an individual, B.M., by kicking him while he was on the ground.**

38.     During the altercation Travon Done shot Michael O. Godinez multiple times with his 9mm firearm.

**ANSWER: Defendant Done admits that he drew his service weapon and shot Godinez in self-defense and in defense of others after personally observing Godinez act in a violent manner outside of the residence where Godinez brandished a firearm while he was kicking and battering an individual, B.M., who was lying on the ground directly beneath Godinez.**

**Defendant Done answers further that he observed Godinez then point his firearm directly at B.M., causing Defendant Done to believe that Godinez was about to shoot and kill said B.M.**

**Defendant Done states he was in immediate fear for the life of B.M. and his own life when he observed Godinez point his firearm directly at B.M., believed Godinez was about to shoot and kill B.M., and therefore Defendant Done then discharged his weapon and shot Godinez in defense of B.M., in self-defense, and in defense of others who were outside of the residence at this time.**

39.     Prior to shooting Michael O. Godinez, Travon Done did not call 911 or request law enforcement backup.

**ANSWER: Defendant admits the allegation in paragraph 39.**

40.     Travon Done fired at least nine shots at Michael O. Godinez with his 9mm firearm.

**ANSWER: Defendant lacks sufficient personal knowledge of the allegations to form a belief as to the truth of the allegations contained in paragraph 40.**

41.     Michael O. Godinez suffered seven gunshot wounds as a result of being shot by Travon Done, including a gunshot wound of the back involving the left lung and spleen, a gunshot wound of the back involving the liver, a gunshot wound of the chest, a gunshot wound of the right upper arm, two gunshot wounds of the left shoulder, and a gunshot graze wound of the right upper arm.

**ANSWER:   Defendant lacks sufficient personal knowledge of the allegations to form a belief as to the truth of the allegations contained in paragraph 41.**

42.     Travon Done shot Michael O. Godinez at least two times in the back.

**ANSWER:  Defendant lacks sufficient personal knowledge of the allegations to form a belief as to the truth of the allegations contained in paragraph 42.**

7

43.     Michael O. Godinez did not fire any weapon or firearm at Travon Done before he was shot by Defendant Done.

**ANSWER:  Defendant admits the allegations contained in paragraph 43.**

44.     Michael O. Godinez did not fire any weapon or firearm while he was at the party at the Coyote Run house.

**ANSWER:  Defendant admits the allegations contained in paragraph 44**

45.     Law enforcement personnel found nine 9mm shell casing at the scene of the shooting.

**ANSWER:  Defendant lacks sufficient personal knowledge of the allegations to form a belief as to the truth of the allegations contained in paragraph 45.**

46.     After being shot by Travon Done, Michael O. Godinez collapsed to the ground in the yard at the Coyote Run house.

**ANSWER: Defendant admits the allegation in paragraph 46.**

47.     Michael O. Godinez suffered severe injuries as a result of being shot by Travon Done.

**ANSWER:  Defendant admits the allegation in paragraph 47.**

48.     After shooting Michael O. Godinez, Travon Done did not attempt to provide or arrange for any emergency medical treatment for Michael O. Godinez.

**ANSWER:  Defendant admits the allegation in paragraph 48.**

49.     After shooting Michael O. Godinez, Travon Done failed to secure the scene.

**ANSWER: Objection to the term "failed to secure the scene" as vague and undefined.**

**Answering further, Ofc. Done states that he immediately left the scene of the shooting and traveled to the Bourbonnais Police Department  where he reported the incident and identified himself as the individual who shot Godinez in self-defense and defense of others.**

50.     After shooting Michael O. Godinez, Travon Done fled the scene of the shooting in the Done vehicle and did not wait for Bourbonnais Police Department officers, the Kankakee County Sheriff's Department officers, other law enforcement officers or emergency personnel to arrive on the scene.

**ANSWER:  Defendant Done denies the allegations in paragraph 50 that he "fled the scene".**

**Answering further, Ofc. Done states that he immediately left the scene of the shooting as he was uncertain as to whether Godinez and/or individuals associated with Godinez continued to pose a threat of continuing danger of serious bodily harm to himself and therefore he immediately traveled to the Bourbonnais Police Department where he reported the incident and identified himself as the individual who shot Godinez in self-defense and defense of others.**

51.     Michael O. Godinez died as a result of being shot by Travon Done.

**ANSWER:   Defendant lacks sufficient personal knowledge and additionally lacks the foundation with regard to the education, training, and professional experience to form a belief as to the truth or accuracy of the allegations contained in paragraph 51 or offer any opinion with regard to the cause of death.**

52.     Michael O. Godinez was subsequently treated by emergency personnel from the Bourbonnais Fire Protection District and then transported to the Amita Health St. Mary's Hospital in Kankakee, where he was declared dead by physicians.

**ANSWER: Defendant Done admits the allegations in paragraph 52.**

53.     Travon Done eventually drove to the Bourbonnais Police Department in the Done Vehicle, where he turned himself in at the Bourbonnais Police Department on May 27, 2023.

**ANSWER: Defendant Done admits the allegations in paragraph 53.**

54.     The firearm Travon Done used to shoot and kill Michael O. Godinez was later found in the Done Vehicle by law enforcement officers investigating the shooting along with, among other things, a waistband holster, ammunition magazine clips containing numerous rounds of ammunition, a box of 9mm ammunition, a fired projectile with drywall pieces on it located in a rubber glove, and a black tactical range bag for a firearm.

**ANSWER:   Defendant Done admits the allegations in paragraph 54.**

55.     Travon Done's firearm that was found in the Done Vehicle was subsequently unloaded by investigating law enforcement officers. The officers found that the magazine clip for the firearm, which normally held 17 rounds of ammunition, only had 8 rounds in it. The officers also found one round in the chamber of Done's firearm.

**ANSWER:  Defendant Done admits the allegations in paragraph 55.**

56.     The firearm that was found in the Done vehicle was possessed and controlled by Travon Done.

9

**ANSWER: Defendant Done admits the allegations in paragraph 56.**

57.    The waistband holster, ammunition magazine clips containing numerous rounds of ammunition, a box of 9mm ammunition, a fired projectile with drywall pieces on it located in a blue rubber glove, and the blacks tactile range bag for a firearm that were found in the Done Vehicle were all possessed and controlled by Travon Done.

**ANSWER:  Defendant Done admits the allegations in paragraph 57.**

58.    Travon Done's actions were intended to maximize the lethality of the encounter, with no regard for other avenues of engagement or the possibility of Michael O. Godinez's survival.

**ANSWER: Defendant Done denies the allegations in paragraph 58.**

**Answering further, Defendant Done states that his actions were taken in self-defense and defense of others.**

59.    Travon Done did not wait for backup assistance from other law enforcement officers before shooting Michael O. Godinez.

**ANSWER: Defendant Done admits the allegations in paragraph 59.  Answering further, Defendant Done states he had literally seconds to react in defense of B.M. and self-defense of himself and others when Godinez brandished his firearm and pointed it directly at B.M. while Godinez was assaulting said B.M.**

**Answering further, Defendant Done states that he thought B.M. was about to be shot and killed by Godinez and therefore Done acted in defense of others and in self-defense when he drew and fired his weapon at Godinez.**

60.    Travon Done did not attempt to exercise persuasion techniques or offer advice prior to shooting Michael O. Godinez.

**ANSWER: Defendant Done admits the allegations in paragraph 60.**

**Answering further, Defendant Done states he had literally seconds to react in defense of B.M. and self-defense of himself and others when Godinez brandished his firearm and pointed it directly at B.M. while Godinez was assaulting said B.M.**

**Answering further, Defendant Done states that he thought B.M. was about to be shot and killed by Godinez and therefore Done acted in defense of others and in self-defense when he drew and fired his weapon at Godinez.**

61.     Travon Done made no attempt to use de-escalation or force mitigation techniques before shooting Michael O. Godinez.

**ANSWER: Defendant Done admits the allegations in paragraph 61.**

**Answering further, Defendant Done states he had literally seconds to react in defense of B.M. and self-defense of himself and others when Godinez brandished his firearm and pointed it directly at B.M. while Godinez was assaulting said B.M.**

**Answering further, Defendant Done states that he thought B.M. was about to be shot and killed by Godinez and therefore Done acted in defense of others and in self-defense when he drew and fired his weapon at Godinez.**

62.     Travon Done did not warn Michael O. Godinez that he was going to shoot him before shooting Michael O. Godinez.

**ANSWER: Defendant Done admits the allegations in paragraph 62.**

**Answering further, Defendant Done states he had literally seconds to react in defense of B.M. and self-defense of himself and others when Godinez brandished his firearm and pointed it directly at B.M. while Godinez was assaulting said B.M.**

**Answering further, Defendant Done states that he thought B.M. was about to be shot and killed by Godinez and therefore Done acted in defense of others and in self-defense when he drew and fired his weapon at Godinez.**

63.     At the time Travon Done shot Michael O. Godinez the first time, no surrounding circumstances existed, which gave rise to the reasonable belief that Defendant Travon Done's life was in danger.

**ANSWER: Defendant Done denies the allegations in paragraph 63.**

64.     Prior to Defendant Travon Done shooting Michael O. Godinez, Michael O. Godinez did not engage in any activity which would have justified the use of lethal or deadly force.

**ANSWER: Defendant Done denies the allegations in paragraph 64.**

65.     At all relevant times, as a sworn police officer Travon Done could only use deadly force in a reasonable and justifiable manner.

**ANSWER: Defendant objects to the allegations contained in paragraph 65 as being vague, confusing, lacking specificity, and misstating the applicable law with regard to the use of deadly force in Illinois.**

**Answering further, Defendant Done states that his use of deadly force on the date of the occurrence was reasonable, justified, and undertaken in self defense of himself and others in accordance with Illinois law.**

66.     When Travon fired his first shot at Michael O. Godinez, the decedent did not pose an imminent threat death or great bodily harm to anyone, such that the use of lethal or deadly force was justified.

**ANSWER: Defendant Done denies the allegations in paragraph 66.**

67.     When Travon Done fired his subsequent shots at Michael O. Godinez, including the two shots into his back, Michael O. Godinez did not pose an imminent threat of death or great bodily harm to anyone, such that the use of lethal or deadly force was justified.

**ANSWER: Defendant Done denies the allegations in paragraph 67.**

68.     When Travon Done fired his first shot at Michael O. Godinez, no police officer could have reasonably believed that Michael O. Godinez posed an imminent threat of death or great bodily harm to any person such that the use of lethal or deadly force was justified.

**ANSWER: Defendant Done denies the allegations in paragraph 68.**

69.     When Travon Done fired his subsequent shots at Michael O. Godinez, including the two shots into his back, no police officer could have reasonably believed that Michael O. Godinez posed an imminent threat of death or great bodily harm to any person such that the use of lethal or deadly force was justified.

**ANSWER: Defendant Done denies the allegations in paragraph 69.**

70.     Travon Done exercised authority under color of law when, among other things, he carried a firearm on his person, displayed the firearm, intervened in the altercation among party guests, and shot Michael O. Godinez with his firearm.

**ANSWER:   Defendant Done objections to the allegations in paragraph 70 relating to "exercised authority under color of law" as vague, confusing, undefined and calling for legal conclusions.**

**Answering further, Defendant Done states he was lawfully authorized to carry a firearm on his person as he was off duty, and a sworn Illinois peace officer employed by the Village of Sauk Village Police Department as a Police Officer when he attended the party at the Coyote Run House on  May 27, 2023.**

**Answering further, Defendant Done states that his use of deadly force on the date of the occurrence was reasonable, justified, and was undertaken in self-defense of himself and others in accordance with Illinois law.**

71.     Each time Travon Done fired his weapon at Michael O. Godinez, he used excessive force in violation of the Fourth Amendment.

**ANSWER: Defendant Done denies the allegations in paragraph 71.**

72.     In shooting Michael O. Godinez multiple times, Defendant Travon Done violated Michael O. Godinez's rights under the Fourth and Fourteenth Amendment to the United States Constitution by using force that was excessive, unnecessary, and unreasonable.

**ANSWER: Defendant Done denies the allegations in paragraph 72.**

73.     Travon Done intentionally fired his weapon at Michael O. Godinez knowing he was exercising lethal or deadly force in shooting Michael O. Godinez.

**ANSWER:  Defendant Done admits the allegations in paragraph 73.**

74.     Travon Done exhibited an utter indifference and reckless disregard for Michael O. Godinez's life when he fired his weapon at Michael O. Godinez.
**ANSWER: Defendant Done denies the allegations in paragraph 74.**

75.     No police officer could have reasonably believed it was necessary to fire nine shots at Michael O. Godinez, including two shots into his back.

**ANSWER: Defendant Done denies the allegations in paragraph 75.**

## COUNT I
### 42 U.S.C. ¶1983 – Fourth & Fourteenth Amendments
### (Michael Anthony Godinez, as Special Administrator for the Estate of Michael O. Godinez, Deceased vs. Travon Done)

76.     Plaintiff repeats and re-alleges the paragraphs of the General Allegations as the first paragraph of this Count.

**ANSWER: Defendant Done repeats and re-alleges his answers to paragraphs 1 through 75 of the General Allegations as the first paragraph of this Count.**

77.     As a direct and foreseeable result of the unlawful actions of Travon Done alleged above, Michael O. Godinez suffered physical pain, emotional anguish, financial losses, the loss of life, and other damages for which his estate should be compensated in just amounts, including the loss of consortium, loss of society and other pecuniary injuries.

13

**ANSWER: Defendant Done denies the allegations in paragraph 77.**

78.     As a proximate cause of the acts and/or omissions of Travon Done in shooting Michael O. Godinez, Michael O. Godinez, prior to his death, suffered great physical injuries, pain, mental anguish, emotional distress and humiliation which resulted in his death, as well as the loss and deprivation of the normal activities, pursuits and pleasures of life, and loss of life, all caused by the violations to and deprivations of his rights under the United States Constitution.

**ANSWER: Defendant Done denies the allegations in paragraph 78.**

79.     As a result of the death of Michael O. Godinez, the next of kin of decent Michael O. Godinez have suffered great losses of personal and pecuniary nature, including sorrow, grief, mental suffering, loss of love, affection, guidance, companionship, society and consortium of Mihcael O. Godinez.

**ANSWER: Defendant Done denies the allegations in paragraph 79.**

80.     By reason of Travon Done's conduct, Michael O. Godinez was deprived of rights, privileges and immunities secured to him by the Fourth and Fourteenth Amendments to the United States and the laws enacted thereunder. Therefore, Travon Done is liable to Plaintiff under 42 USC § 1983.

**ANSWER: Defendant Done denies the allegations in paragraph 80.**

WHEREFORE, Defendant Done, by and through his attorneys, respectfully prays that judgment be entered in their favor and against Plaintiff, and that this Court grant such further relief as may be necessary and just.

### COUNT II
### State Law Claim for Wrongful Death
### (Michael Anthony Godinez, as Special Administrator for the Estate of Michael O. Godinez, Deceased vs. Travon Done)

81.     Plaintiff repeats and re-alleges the paragraphs of the General Allegations as the first paragraph of this Count.

**ANSWER: Defendant Done repeats and re-alleges his answers to paragraphs 1 through 75 of the General Allegations as the first paragraph of this Count.**

82.     Travon Done intentionally and without legal justification shot Michael O. Godinez multiple times, causing great bodily harm and death to Michael O. Godinez.

**ANSWER: Defendant Done denies the allegations in paragraph 82.**

83.     As a direct and proximate cause of Travon Done's unlawful acts, the next of kin of Michael O. Godinez suffered great losses of personal and pecuniary nature, including sorrow, grief, mental suffering, loss of love, affection, guidance, companionship, society, and consortium of Michael O. Godinez.

**ANSWER:  Defendant Done denies the allegations in paragraph 83.**

WHEREFORE, Defendant Done, by and through his attorneys, respectfully prays that

judgment be entered in their favor and against Plaintiff, and that this Court grant such further relief

as may be necessary and just.

**COUNT III**
**State Law Claim for Survival – Intentional Battery**
**(Michael Anthony Godinez, as Special Administrator for the Estate of Michael O. Godinez, Deceased vs. Travon Done)**

84.     Plaintiff repeats and re-alleges the paragraphs of the General Allegations as the first paragraph of this Count.

**ANSWER: Defendant Done repeats and re-alleges his answers to paragraphs 1 through 75 of the General Allegations as the first paragraph of this Count.**

85.     This count is brought pursuant to 734 ILCS 5/13-209 and 755 ILCS 5/27-6 (commonly referred to as the "Survival Act").

**ANSWER: Defendant Done admits the allegations in paragraph 85.**

86.     As a direct and proximate cause of Travon Done's unlawful acts, Michael O. Godinez suffered gunshot wounds, severe personal injuries, including intense pain and suffering from his physical injuries and extreme psychological trauma from his emotional distress.

**ANSWER: Defendant Done denies the allegations in paragraph 86.**

WHEREFORE, Defendant Done, by and through his attorneys, respectfully prays that

judgment be entered in their favor and against Plaintiff, and that this Court grant such further relief

as may be necessary and just.

## COUNT IV
### State Law Claim for Survival – Willful & Wanton Battery
### (Michael Anthony Godinez, as Special Administrator for the Estate of Michael O. Godinez, Deceased vs. Travon Done)

87.     Plaintiff repeats and re-alleges the paragraphs of the General Allegations as the first paragraph of this Count.

**ANSWER: Defendant Done repeats and re-alleges his answers to paragraphs 1 through 75 of the General Allegations as the first paragraph of this Count.**

88.     This count is brought pursuant to 734 ILCS 5/13-209 and 755 ILCS 5/27-6 (commonly referred to as the "Survival Act").

**ANSWER: Defendant Done admits the allegations in paragraph 86.**

89.     As a direct and proximate cause of Travon Done's unlawful acts, Michael O. Godinez suffered gunshot wounds, severe personal injuries, including intense pain and suffering from his physical injuries and extreme psychological trauma from his emotional distress.

**ANSWER: Defendant Done denies the allegations in paragraph 89.**

WHEREFORE, Defendant Done, by and through his attorneys, respectfully prays that judgment be entered in their favor and against Plaintiff, and that this Court grant such further relief as may be necessary and just.

## COUNT V
### Respondent Superior
### (Michael Anthony Godinez, as Special Administrator for the Estate of Michael O. Godinez, Deceased vs. Sauk Village)

90.     Plaintiff repeats and re-alleges the paragraphs of the General Allegations as the first paragraph of this Count.

**ANSWER: Defendant Done repeats and re-alleges his answers to paragraphs 1 through 75 of the General Allegations as the first paragraph of this Count.**

91.     In committing the acts alleged in the preceding paragraphs, Travon Done was a member and agent of the Sauk Village Police Department and Sauk Village, acting at all relevant times within the scope of his employment.

**ANSWER: Defendant objects to the term "In committing the acts alleged in the preceding paragraphs" as lacking any specificity whatsoever. Defendant further objects to the term "agent " in paragraph 91 as calling for a legal conclusion.**

**Without waiving said objections, Defendant Done states he was lawfully authorized to carry a firearm on his person on the date of the occurrence as he was an off duty, sworn Illinois peace officer employed by the Village of Sauk Village Police Department as a Police Officer on the date of the occurrence.**

**Answering further, Defendant Done admits he was acting within the scope of his employment as a Sauk Village Police officer on the date of the occurrence and states his use of deadly force was reasonable, justified, and was undertaken in self-defense of himself and others in accordance with Illinois law.**

92.     Sauk Village is liable as principal for all torts committed by its agents.

**ANSWER: Defendant admits the allegations contained in paragraph 92 but denies he committed any actionable torts on the date of the occurrence.**

93.     As a direct and proximate cause of Travon Done's unlawful acts, which occurred within the scope of his employment, Plaintiff was severely injured and died of his injuries.

**ANSWER: Defendant denies the allegations contained in paragraph 93 that he committed any unlawful acts.**

**Defendant admits that he was acting in the scope of his employment as a Sauk Village Police officer when he shot Godinez in self-defense and defense of others.**

**Answering further, Defendant Done states that his conduct on the date of the occurrence in shooting decedent Godinez was exhaustively investigated by the Kankakee County Sheriff's Office and extensively reviewed by the Kankakee County States Attorney's Office and was found to be justified and undertaken in defense of self and others.**

WHEREFORE, Defendant Done, by and through his attorneys, respectfully prays

that judgment be entered in their favor and against Plaintiff, and that this Court grant such further

relief as may be necessary and just.

**COUNT VI**
**745 ILCS 10/9-102 - Indemnification**
**(Michael Anthony Godinez, as Special Administrator for the Estate of Michael O. Godinez, Deceased vs. Sauk Village)**

94.     Plaintiff repeats and re-alleges the paragraphs of the General Allegations as the first paragraph of this Count.

**ANSWER: Defendant Done repeats and re-alleges his answers to paragraphs 1 through 75 of the General Allegations as the first paragraph of this Count.**

95.     At all relevant times, Sauk Village was the employer of Travon Done.

**ANSWER: Defendant Done admits the allegations in paragraph 95.**

96.     Illinois law provides that public entities such as Sauk Village are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

**ANSWER: Defendant Done admits the allegations in paragraph 96.**

97.     Travon Done committed the acts alleged above under color of law and while acting within the scope of his employment.

**ANSWER:   Defendant objects to the term "In committing the acts alleged above" as lacking any specificity whatsoever..**

**Without waiving said objections, Defendant Done states he was lawfully authorized to carry a firearm on his person on the date of the occurrence as he was an off duty, sworn Illinois peace officer employed by the Village of Sauk Village Police Department as a Police Officer on the date of the occurrence.**

**Answering further, Defendant Done admits he was acting under color of law and acting within the scope of his employment as a Sauk Village Police officer on the date of the occurrence and states his use of deadly force was reasonable, justified, and was undertaken in self-defense of himself and others in accordance with Illinois law.**

98.     As a direct and proximate cause of Travon Done's unlawful acts, which occurred within the scope of his employment, Plaintiff was severely injured and died of his injuries.

**ANSWER: Defendant denies the allegations contained in paragraph 98 that he committed any unlawful acts.**

**Defendant admits that he was acting in the scope of his employment as a Sauk Village Police officer when he shot Godinez in self-defense and defense of others.**

**Answering further, Defendant Done states that his conduct on the date of the occurrence in shooting decedent Godinez was exhaustively investigated by the Kankakee County Sheriff's Office and extensively reviewed by the Kankakee County States Attorney's Office and was found to be justified and undertaken in defense of self and others.**

WHEREFORE, Defendant Done, by and through his attorneys, respectfully prays that judgment be entered in their favor and against Plaintiff, and that this Court grant such further relief as may be necessary and just.

Respectfully submitted,
TRAVON DONE

By: */s/ Sean M. Sullivan*
Sean M. Sullivan

K. Austin Zimmer (#6276227)
Sean M. Sullivan (#6204611)
Sean M. Hoffman (#6315418)
DEL GALDO LAW GROUP, LLC
1441 S. Harlem Ave.
Berwyn, IL 60402
(708) 222-7000
(708) 222-7001 Fax
zimmer@dlglawgroup.com
sullivan@dlglawgroup.com
hoffman@dlglawgroup.com

**UNITED STATE DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

MICHAEL ANTHONY GODINEZ, as )
special administrator for the estate of )
MICHAEL O. GODINEZ, deceased, )
)
      Plaintiff, )
)
      vs. )     Case No. 24-cv-04317
)
TRAVON DONE, and the VILLAGE OF SAUK )
VILLAGE, an Illinois municipal corporation, )
)
      Defendants. )

**<u>DEFENDANT TRAVON DONE'S AFFIRMATIVE DEFENSES</u>**

      NOW COME Defendant Travon Done, by and through his attorneys, Sean M. Sullivan and

Del Galdo Law Group, and for his Affirmative Defenses, allege as follows:

<u>First Affirmative Defense</u>

1.      To the extent plaintiff failed to mitigate any of the claimed injuries or damages, any verdict

or judgment obtained by plaintiff must be reduced by application of the principle that plaintiff has

a duty to mitigate his damages, commensurate with the degree of failure to mitigate attributed to

plaintiff by a jury in this case.

<u>Second Affirmative Defense</u>

2.      To the extent any injuries or damages claimed by plaintiff was proximately caused, in

whole or in part, by the negligent, willful, wanton and/or other wrongful conduct of the decedent

or plaintiff, any verdict or judgment obtained by plaintiff must be reduced by application of the

principles of comparative fault, by an amount commensurate with the degree of fault attributed to

the decedent or plaintiff by the jury in this cause.

<u>Third Affirmative Defense</u>

3.      At all relevant times defendant Travon Done  was a government official, namely a Sauk Village police officer, who performed discretionary functions. At all relevant times, a reasonable police officer objectively viewing the facts and circumstances that confronted defendant could have believed his actions to be lawful, in light of clearly established law and the information that defendant possessed. Defendant, therefore, is entitled to qualified immunity as to plaintiff's federal claims.

<u>Fourth Affirmative Defense</u>

4.      At all relevant times defendant was acting within the scope of his employment, he is not liable for his acts or omissions in the execution of enforcement of the law, unless such acts or omissions constitutes willful and wanton conduct. 745 ILCS 10/2-202 (2013).

<u>Fifth Affirmative Defense</u>

5.      As to all state law counts, under the Illinois Tort Immunity Act, defendant is not liable for any of the claims alleged because his actions were based upon the information and circumstances known to defendant at the time and were discretionary decisions for which he is immune from liability. 745 ILCS 10/2-201 (2013).

<u>Sixth Affirmative Defense</u>

6.      As to plaintiff's alleged state law claims, defendant is not liable for any of the claims alleged because his actions constitute a reasonable use of force in that: force had been threatened against the defendant or another, the defendant was not the aggressor, the danger of  harm was imminent, the threatened force was unlawful, the defendant had an actual belief that a danger existed that force was necessary to avert the danger, the amount of force used was necessary and the defendant's belief was reasonable. 720 ILCS 5/7-1

<u>Seventh Affirmative Defense</u>

7.     As to plaintiff's alleged state law claims, defendant is not liable to pay attorney's fees since in Illinois, absent a statute or contractual agreement, attorney fees and the ordinary expenses and burdens of litigation are not allowable to the successful party. Kerns v. Engelke, 76 Ill. 2d. 154, 166 (1979).

<u>Eighth Affirmative Defense</u>

8.     As to the plaintiff's state law claims, under the Illinois Tort Immunity Act, defendant is not liable for any of the claims alleged because public employees acting within the scope of their employment are not liable for an injury caused by the act or omission of another person. 745 ILCS 10/2-204 (2013).

<u>Ninth Affirmative Defense</u>

9.     As to the state law claims, under the Illinois Tort Immunity Act, defendant is not liable to plaintiff because any allegation based on the defendant police officers' decisions as to the way he attempted to defend himself when faced with the imminent use of deadly force by Plaintiff's decedent,  and his decisions regarding the use of deadly force to defend himself and others against plaintiff's decedent, are barred by Section 4-102 of the Illinois Tort Immunity Act. 745 ILCS 10/4-102 (2013).

       WHEREFORE, Defendant Travon Done, by and through his attorneys, Sean M. Sullivan and DEL GALDO LAW GROUP, respectfully pray that judgment be entered in his favor and against Plaintiff and that this Court grant such further relief as may be necessary and just.

Respectfully submitted,
TRAVON DONE

By: */s/ Sean M. Sullivan*
Sean M. Sullivan

K. Austin Zimmer (#6276227)
Sean M. Sullivan (#6204611)
Sean M. Hoffman (#6315418)
DEL GALDO LAW GROUP, LLC
1441 S. Harlem Ave.
Berwyn, IL 60402
(708) 222-7000
(708) 222-7001 Fax
zimmer@dlglawgroup.com
sullivan@dlglawgroup.com
hoffman@dlglawgroup.com