UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL ANTHONY GODINEZ, as special administrator of the estate of Michael O. Godinez, | |
| Plaintiff, | No. 24 CV 4317 |
| v. | Judge Manish S. Shah |
| TRAVON DONE and THE VILLAGE OF SAUK VILLAGE, | |
| Defendants. | |

ORDER

Defendant Sauk Village's partial motion to dismiss Counts V and VI of the complaint, [11], is denied. Plaintiff's *respondeat superior* and indemnification claims under Illinois law survive, but any claims brought under § 1983 against the Village are dismissed for failure to state a claim. The Village shall answer the complaint by 3/7/25. The parties' status report on discovery progress remains due 3/12/25.

STATEMENT

Off-duty Sauk Village police officer Travon Done shot and killed Michael O. Godinez while attending a party in Bourbonnais, Illinois. [1] ¶¶ 18, 23.* Defendant Done and Godinez were both guests at the party. *Id.* ¶¶ 21–22. In the early morning hours, some of the guests got into a verbal altercation. *Id.* ¶ 34. Guests were told to leave, and the altercation moved to the yard of the residential house. *Id.* ¶¶ 36–37. Sometime during this altercation, Done shot Godinez multiple times with a 9mm firearm. *Id.* ¶ 38.

Done never called 911 or requested backup. [1] ¶ 39. Instead, he fled the scene of the shooting in his personal vehicle before the Bourbonnais Police Department, Kankakee County Sheriff's Department, and emergency services arrived. *Id.* ¶ 50. Godinez suffered multiple gunshot wounds and was declared dead after being

---

* Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from plaintiff's complaint, [1].

transported to a nearby hospital. *Id.* ¶¶ 41, 51–52. The same day, Done turned himself in to the Bourbonnais Police Department. *Id.* ¶ 53. Officers found Done's firearm and various ammunition in Done's personal vehicle. *Id.* ¶ 54.

Michael Anthony Godinez, on behalf of Michael O. Godinez's estate, brings this suit against Done under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments. [1] ¶¶ 77–80 (Count I). He alleges that Done was acting under the color of state law when Done shot and killed Godinez. *Id.* ¶¶ 20, 70. He brings state-law claims against Done for wrongful death, intentional battery, and willful and wanton battery under the Illinois Survival Act. *Id.* ¶¶ 81–89 (Counts II–IV). Godinez brings *respondeat superior* and indemnification claims against defendant Sauk Village. *Id.* ¶¶ 90–98 (Counts V and VI).

Done answered the complaint. [36]. Sauk Village moves to dismiss the *respondeat superior* and indemnification claims under Fed. R. Civ. P. 12(b)(6) because Done was not acting under the scope of his employment when he committed the tortious act. [11].

A complaint must contain "a short and plain statement" showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). At this stage, I accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor, disregarding legal conclusions or "[t]hreadbare recitals" supported by only "conclusory statements." *Iqbal*, 556 U.S. at 678.

For Godinez to recover under 42 U.S.C. § 1983, he must establish that Done acted "under color of state law" to deprive him of a federal right. *See Pickrel v. City of Springfield, Ill.*, 45 F.3d 1115, 1118 (7th Cir. 1995). Whether a police officer acted under color of state law "should turn largely on the nature of the specific acts the police officer performed" rather than whether the officer was actively performing police duties at the time. *Id.* at 1118. Done admits that, at the time of the shooting, he was off duty and acting under the color of state law. [36] ¶¶ 20, 23. Done further admits that he used his service weapon to shoot Godinez in defense of himself and others after Godinez "act[ed] in a violent manner outside of the residence" and "brandished a firearm." *Id.* ¶ 38.

Godinez brings a *respondeat superior* claim under Illinois law in Count V of his complaint. [1] ¶¶ 90–93. But in his response brief, he also raises *respondeat superior* liability under § 1983 against the Village. [48] at 13–15. He alleges elsewhere in his complaint that the Village is "responsible for the policies, practices, and customs of its Police Department." [1] ¶ 14. He cites to Sauk Village Ordinance § 42-23: "It shall be the duty of every member of the police department to conduct himself in a proper

2

and law-abiding manner, and to avoid the use of unnecessary force." [1] ¶ 24. The complaint does not otherwise allege policies, practices, or customs of Sauk Village.

To the extent that Godinez pleads *respondeat superior* under § 1983 against the Village, such a claim is squarely foreclosed. *See Bohanon v. City of Indianapolis*, 46 F.4th 669, 672 (7th Cir. 2022) ("Municipalities cannot be held vicariously liable under § 1983 for the constitutional torts of their employees."); *see also First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021) (reiterating that § 1983 "does not incorporate the common-law doctrine of *respondeat superior*"). The Village may be held liable under § 1983 only "for its own violations of the federal Constitution and laws." *First Midwest Bank*, 988 F.3d at 986. Godinez must first allege municipal action in the form of: (1) "an express policy that causes a constitutional deprivation when enforced"; (2) a widespread custom or practice; (3) or action by somebody with final policymaking authority. *Id.* He must also allege that the Village's policy or custom "demonstrates municipal fault" and that it was the "moving force" behind Godinez's constitutional injury. *Id.* at 986–87.

Godinez does not adequately allege any of the elements to establish *Monell* liability. He alleges that Done failed to abide by the Village's ordinance when he shot Godinez. [1] ¶¶ 25–26, 65. In other words, it's not the enforcement of the Village's ordinance that caused the constitutional injuries at issue. "When a municipality takes action or directs an employee to take action that facially violates a federal right, municipal fault is easily established." *First Midwest Bank*, 988 F.3d at 986. But in cases like present, a plaintiff alleging that a municipality's policy or custom "caused an employee" to violate his federal rights faces the additional hurdle of establishing deliberate indifference. *Id.* at 987. Additionally, Godinez fails to plausibly allege a causal link between the ordinance and the rights violations. *See McCauley v. City of Chicago*, 671 F.3d 611, 618–19 (7th Cir. 2011) (to state a *Monell* claim, a plaintiff must allege facts that permit a reasonable inference that the municipality had a policy or practice that caused the injuries). Any § 1983 claims against the Village are dismissed.

A distinct but related inquiry is whether Done was "acting within the scope of his employment" at the time of the shooting. *See Maynard v. City of Chicago*, No. 24-cv-3612, 2024 WL 4664473, at *8 (N.D. Ill. Nov. 4, 2024) (noting the overlapping facts for an "under color" and "scope of employment" analysis of an off-duty officer's use of force). Under the Illinois Tort Immunity Act, "[a] local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages… for which it or an employee while acting within the scope of his employment is liable…" 745 ILCS 10/9-102; *Brown v. King*, 328 Ill.App.3d 717, 724 (1st Dist. 2001) (clarifying that the analysis for indemnification and *respondeat superior* liability is the same under section 9-102). An employer's liability "extends to the negligent, willful, malicious or even criminal acts" of its employees. *Adames v. Sheahan*, 233 Ill.2d 276, 298 (2009).

Under Illinois law, an employee was acting within scope of their employment if: (1) the relevant conduct was the kind that the employee was employed to perform; (2) the conduct occurred substantially within the time and space limits authorized by the employment; and (3) the conduct was motivated, at least in part, by a purpose to serve the employer. *Elston v. Cnty. of Kane*, 948 F.3d 884, 887 (7th Cir. 2020) (citing *Adames*, 233 Ill.2d at 298–99).

The Village objects to plaintiff's incorporation by reference of Done's answer to the complaint, [36], as external to the pleadings. [49] at 3–4. When ruling on a motion to dismiss under Rule 12(b)(6), I may consider only allegations in the complaint or documents that are "(1) referenced in the plaintiff's complaint, (2) concededly authentic, and (3) central to the plaintiff's claim." *Fin. Fiduciaries, LLC v. Gannett Co.*, 46 F.4th 654, 663 (7th Cir. 2022). But that standard applies to additional materials relied on by a party moving to dismiss under Rule 12(b)(6). *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). A plaintiff, on the other hand, "has much more flexibility in opposing a Rule 12(b)(6) motion" and is permitted to "elaborate on his factual allegations so long as the new elaborations are consistent with the pleadings." *Id.* A nonmoving party "may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove." *Id.*

Here, Done's admissions elaborate on events central to the complaint—the gun Done used, the nature of the verbal altercation, Godinez's involvement, and how Done responded to the situation. Done's admissions about his service gun and the circumstances leading to his use of force, if proven true, plausibly support an inference in plaintiff's favor at least to the first and third elements of the scope-of-employment inquiry. *See Maynard*, 2024 WL 4664473, at *8 (taking into account officer's "'admission' that she was acting within the scope of her employment" as "reflecting her subjective belief that she was acting as a Chicago Police officer" during the disputed events). I consider Done's admissions in ruling on the Village's motion to dismiss.

As to the first element, plaintiff plausibly alleges that the shooting was the type of conduct that Godinez was employed to perform as a police officer of Sauk Village. Done's use of his service weapon and conduct in defense of himself and others at the party were plausibly performed to "enforce the law and preserve the peace." *Wolf v. Liberis*, 153 Ill.App.3d 488, 493 (1st Dist. 1987).

On the second element, the Village contends the time and space requirements are not met because Done was both off-duty and outside the Village's jurisdiction in Bourbonnais. [11] at 8–11. That an officer's conduct occurred off shift or outside of their jurisdiction is not necessarily dispositive. *See Brown*, 328 Ill.App.3d at 722 ("[A]n off-duty officer may often be found to be acting within the scope of his employment."); *Elston*, 948 F.3d at 887 ("[T]he mere fact that conduct occurred outside of the spatial boundaries of one's employment" is not dispositive). Rather, "the determination is a matter of degree… dependent on the interaction between both time

4

and place, in light of all the facts." *Elston*, 948 F.3d at 887. The Village requests I take judicial notice of the fact that Sauk Village is over 33 miles away from Bourbonnais. [11] at 10. It cites to *Anderson v. Moussa*, 250 F.Supp.3d 344 (N.D. Ill. 2017), a case involving an off-duty Chicago Police Department officer's use of force more than 20 miles outside the city's limits while he attended to a personal family matter. In granting summary judgment in favor of the City on vicarious liability, the court noted the absence of any case in which "a police officer who was *both* off-duty *and* far outside his jurisdiction" was found to be acting within the scope of his employment. *Anderson*, 250 F.Supp.3d at 348 (emphasis in original). That case was decided after the record was fully developed. At this stage, there are insufficient facts to determine that, as a matter of law, Done's conduct was outside the spatial and temporal limits authorized by the Sauk Village Police Department. *Elston*, 948 F.3d at 888 (noting that the County's policy prohibiting off-duty deputies from performing law enforcement actions outside jurisdictional limits was not dispositive).

Finally, the third element considers whether "the employee's motive, or at least *a* motive, in committing the tort was to serve his employer." *Id.* at 888 (emphasis in original). Here, Done's admission that he was protecting himself and other partygoers in response to a threat posed by Godinez supports a plausible inference that Done was at least partially motivated by a purpose to serve the Village's law enforcement functions. *See Gaffney v. City of Chicago*, 302 Ill.App.3d 41, 54 (1st Dist. 1998) (holding that the motivation element is satisfied "even if the employee is also motivated by personal considerations").

To be sure, the Village points out factors that cut against plaintiff's theory: Done's use of a personal vehicle, his attendance at a party for personal matters, his fleeing the scene before the arrival of emergency services. [49] at 5–6, 10. But the scope-of-employment inquiry is a fact-intensive one, *see Elston*, 948 F.3d at 887, and for now, plaintiff plausibly alleges that Done was acting within the scope of his employment when he shot Godinez.

The Village's motion to dismiss Counts V and VI of the complaint, [11], is denied. But to be clear, any § 1983 claim against the Village is dismissed.

ENTER:

Date: 2/14/25

Manish S. Shah
U.S. District Judge

5